Blair v. State, No. 546-9-00 Wncv  (Katz, J., July 11, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                        SUPERIOR COURT
Washington County, ss.:                                Docket No. 546-9-00Wncv

Blair

v.

State of Vermont

Entry

Prior to jury trial in August 2004, the court (Judge Cook presiding) severed amended Count IX (the denial of access to courts claim) from the other claims to be submitted to the jury.  At trial, the court dismissed all other claims except for negligent supervision, which was submitted to the jury.  Upon failing to reach a verdict, the jury was declared hung on that claim.  We address here these two remaining claims.

This entire case arises out of claimed sexual misconduct by Officer Martin, harming Blair.

Blair does not spell out the elements of his negligent supervision claim.  The claim seems to be based on the general feeling that the atmosphere of the Caledonia Work Camp was uncontrolled by reasonable supervision and training leading to pervasive problems with misconduct by the guards, particularly Officer Martin.  Due to the hostile atmosphere, the

claim goes, prisoners such as Blair were paralyzed with fear of retribution if they filed grievances, and so they did not, perpetuating and magnifying the harms. Blair also argues that the State should have instituted different rules relating to sexual harassment and grievance procedures, and a distinct set of rules relating to work obligations.

The primary problem with Blair's argument is that, after five years of litigation, still he offers no significant evidence in support of it. Essentially, Blair argues that a previous grievance filed by him (not relating to Martin or sexual harassment issues) did not lead to the result he desired. That grievance was investigated internally and then dismissed on a finding that Blair's allegations were untrue; it appears to have not been litigated further. Nothing interfered with Blair's ability to file that grievance and no retribution resulted from it. Blair never filed a grievance about Martin. When a different inmate did so, a police investigation quickly ensued, the matter was referred to a state prosecutor for possible prosecution, and Martin's employment with the DOC ended. Based on this evidence, we can only conclude that the grievance policy worked effectively regarding Martin's misconduct the very first time it was used. Blair's claimed fear about using the grievance policy appears to have no objective basis in the evidence whatsoever.

Blair also claims that the DOC should have had other rules in place regarding officer training, the sexual harassment policy, and special rules applicable to the workplace setting. The State has outlined its policies, training protocol, and the trainings Martin actually participated in. Blair, however, does not explain where the shortcomings are. He merely asserts that other rules should have been in place. We fail to see how any breach could be determined, or causation established, on this record.

Blair's negligent supervision claim amounts to little more than the claim that the fact of Martin's sexual misconduct proves the negligent supervision. Negligent supervision, however, is independent of the underlying tort, *Brueckner v. Norwich Univ.*, 169 Vt. 118, 126 (1999), even though the underlying tort is an element of it, *Haverly v. Kaytec*, 169 Vt.

2

350, 357 (1999). Blair has the burden of proof with regard to all the ordinary elements of a negligence claim. See *Brueckner*, 169 Vt. at 126-27. Under § 213 of the Restatement (Second) of Agency,

> Liability results . . ., not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. The employer is subject to liability only for such harm as is within the risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm.

Restatement (Second) of Agency § 213 cmt. d. We see no factual basis for any conclusion that the State should have known, prior to the grievance, that Martin presented an unusual risk of sexual misconduct. Similarly, we see no basis for concluding that the State failed to make or follow policies, or that the policies in place were somehow insufficient, and contributed to an environment in which such misconduct would arise. See generally *id.* cmt. g. (inadequate regulations). In short, we see no basis for Blair's negligent supervision claim. We need not address the State's other arguments for rejecting this claim.

Blair's final claim is for denial of access to courts. Evidently, during this litigation, the DOC determined to transfer Blair to an out-of-state prison location after finding him responsible for organizing boxing matches. Blair did not want to be transferred. He alleges that the State then made him a settlement offer in this case: settle for a small amount and you will not be transferred. He rejected the offer. He does not allege that the State's offer had any effect whatsoever on this litigation, and we see no basis for any such claim. Minimally, to have a claim for denial of access to courts, there must be some kind of denial involved. See *Christopher v. Harbury*, 536 U.S. 403, 413-15 (2002) (discussing the types of denial of access cases). "Whether an access claim turns on a litigating opportunity

3

yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id*. at 414-15. The rejected settlement offer episode did not cause Blair to be "shut out of court" in any manner. *Id*. at 415. The evidence does not reasonably support a conclusion that Blair was transferred because he pursued this litigation.

Blair's final two claims are dismissed.

Dated at Montpelier, Vermont, _____, 20___.

_____
Judge